OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN



GROVER SELLERS
ATTORNEY GENERAL

Honorable Bascom Giles
General Land Office
Austin, Texas

Dear Sir:                     Opinion No. O-7269

                              Re:  Is the Commissioner
                                   of the General Land
                                   Office authorized under
                                   the existing statutes
                                   to accept the extension
                                   contract as a new lease
                                   and file as such, under
                                   the given facts?

        We are in receipt of your letter of September
17, 1946, wherein you request our opinion on the follow-
ing state of facts:

        "On September 7, 1939, M. M. Garcia of
Laredo, Texas, acting individually and as agent
for the State of Texas, executed and delivered
to D.&D. Oil Company and Transwestern Oil Com-
pany, as lessee, an oil, gas and mineral lease
covering all of Survey 540, Certificate 508,
C.C.S.D. & R.G.N.G. Ry. Co., original grantee,
in Starr County, which lease was duly recorded
in the Deed Records of Starr County, Texas, and
a copy of same filed in the General Land Office
on September 11, 1939.  Said oil, gas and min-
eral lease was executed on the regular 'Form 88,'
as revised, and there accompanied the said lease
the bonus due the State of Texas.  The original
lease recited that the above described survey con-
tains 615 acres; however, a later survey revealed
641.36 acres in said tract.  The same M. M. Garcia,
acting individually and as agent for the State of
Texas, did on May 12, 1943, execute an instrument
purported to amend and correct the original lease
to include the acreage as shown by the corrected
field notes and subsequent survey.  The primary

term of the original lease was for a term of seven
(7) years from May 8, 1939. The annual rentals have
been received as due on the above cited lease and
the same remained on the records of this office
through the primary term as a valid lease, recognized
as covering the area specified therein.

"On March 19, 1946, M. M. Garcia, acting indivi-
dually and as agent for the State of Texas, executed
another instrument which is titled, 'Amendment, Ratifi-
cation and Extension of Primary Term of Oil and Gas
Lease.' This instrument, together with the considera-
tions recited therein, was received in the General
Land Office, on June 6, 1946.

"I attach hereto a photostatic copy of the instru-
ment and invite your attention to the fact that this in-
strument was executed prior to the expiration date of the
original lease. In view of these facts as outlined, I
respectfully ask your opinion on the following statement:

"1.    The extension contract having been executed
prior to the termination date of the origi-
nal lease and the primary term now having
expired, am I authorized under the exist-
ing statutes, to accept the extension con-
tract as a new lease and file as such."

The relinquishment Act is codified in Vernon's Anno-
tated Civil Statutes in Articles 5367-68. Article 5368 involved
herein reads as follows:

"The owner of said land, is hereby authorized to
sell or lease to any person, firm or corporation the
oil and gas that may be thereon or therein upon such
terms and conditions as such owner may deem best, sub-
ject only to the provisions hereof, and he may have a
second lien thereon to secure the payment of any sum
due him.   All leases and sales so made shall be assign-
able. No oil or gas rights shall be sold or leased here-
under for less than ten cents per acre per year plus
royalty, and the lessee or purchaser shall in every case
pay the State ten cents per acre per year of sales and
rentals; and in case of production shall pay the State
the undivided one-sixteenth of the value of the oil and
gas reserved herein, and like amounts to the owner of
the soil.  (Acts 2nd C.S. 1919, page 249)."

The relationship of the State and its agent is well
discussed in Judge Taylor's opinion of the Supreme Court, in

Lewis v. Oates, 195 S. W. 2d 123, page 133.

"The distinction lies in the very fact that the State of Texas was Oates' principal and that as an agent of the State the method of his procedure in selling the mineral estate in the land was fixed by the legislature as provided in the Relinquishment Act. He became such an agent by the provisionsof that act and not on the basis or consideration of whether he would be derelict in leasing the land or would not be. He was no more selected on that basis as an agent than he was selected on that basis by the state as an awardee of the land in question. It would have been awarded to him whether saint or sinner in his method of dealing. Likewise Oates became the surface owner and agent of the state without regard to whether he would be derelict in his duty or whether he would not be derelict. The land was awarded to him pursuant to the state's homesteading policy and the state, in selling through him its mineral estate, protected him in the enjoyment of his surface estate and compensated him on the basis fixed by the legislature in the Relinquishment Act."

The Supreme Court in the case of Empire Gas and Fuel Company vs. State, 47 S. W. 2d 265-272, interpreted the above statute inthe following language:

"The rule is also well settled that legislative grants of property rights and privileges must be construed strictly in favor of the State on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the State."

In accordance with the above interpretations and in absence of statutory authority granted the agent, the State would not be bound by a contract of extension entered into by the agent and the lessor prior to the termination of the lease.

We are not in accord with the letter opinion of the Honorable Grady Chandler, written on the 14th day of December, 1938, wherein he stated that the agent of the state had the right to grant an original lease, also has the authority to execute an extension, and so far as in conflict herewith is hereby overruled.

The Supreme Court of this State in Lamar vs. Garner, 50 S.W. 2d 773, cited with approval in State vs. Magnolia, 173 S.W. 2d 186, confined the rights of the agent of the state to the terms of the lease, using the following language:

"In our opinion, the act, when fairly and reasonably construed, also means that all minerals not disposed of go with the title of the land, subject to the provisions of the act. That when a valid and binding lease or conveyance of the minerals is made by the owner of the land, as the agent of the state, then in that event he receives the foregoing amounts as compensation for his services. His share of the rentals, royalties, and bonuses derived from the leases executed by him become property rights during the period of time for which the lease runs. Prior to the making of the mineral lease, the owner of the land has no right to assign or convey any mineral rights in the property. It is the intention of the law that the owner of the land shall be the agent of the state to execute mineral leases. Whenever a mineral lease executed by a prior owner terminates, the then owner of the land becomes the agent, of the state with authority to sell or lease the oil and gas mineral rights, as provided for in the Relinquishment Act."

We understand the Relinquishment Act as interpreted by the Texas courts in the above enumerated cases to hold that the surface owner is the duly constituted agent of the state for the purpose of executing an ordinary commercial oil and gas lease leasing the oil and gas estate in and under his surface estate. That the surface owners share of the rentals, royalties, and bonuses derived from the lease executed by him become a property right during the period of time for which the lease runs. That whenever the surface owner, acting as agent of the state in accordance with the provisions and spirit of the Relinquishment Act, as interpreted by the cases and as modified by the subsequent acts of the Legislature, has executed a valid oil and gas lease for the state and the same is filed in the General Land Office, he has thereby exhausted his statutory authority to act thereafter as agent of the state until the termination date of said lease, or during any time said lease is in full force and effect. Of course, the surface owner at the expiration date of the lease or at such time when there is no valid lease covering the oil and gas mineral estate in and under his lands; he becomes the duly constituted agent of the state under the Relinquishment Act for the purpose of executing a new oil and gas lease. It is our opinion therefore, that any attempted lease contract entered into between the surface owner

and the lessee of the state during the life or pendency of the primary lease is voidable as against public policy, as the surface owner then lacks authority to act as agent for the state.

In the case of State v. Magnolia, supra, this principle is stated in the following language:

"The state is not required to ratify or adopt the unauthorized act of its supposed agent but may repudiate them as unauthorized and ask that they may be set aside and held for naught. When the agent has exceeded authority the opposite party is not entitled to have the contract enforced to the extent that the agent had authority to act. 2 Tex. Jur. 547, paragraph 145 Evants v. Fuqua, 102 Tex. 430. Connor v. Uvalde National Bank, 156 S.W. 1092 . . ."

However, in reply to your question, under the facts here presented, the original lease and the primary term now having expired - the same agent still being the owner of the land and now having authority to enter into a new lease, you are authorized under the existing statutes to elect to accept the purported extension contract as a new lease or as an offer to enter into a new lease. If the first alternative is selected by you, you are required to give it the same care and scrutiny accorded an original lease. If the latter alternative is chosen a new lease with the terms of the extension contract embodied therein must be prepared and presented to you as Commissioner of the General Land Office for your approval.

This Opinion is confined to the particular facts stated by you.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By        (Signed)
          W. V. Watts
          Assistant.

APPROVED NOV 8 1946
/s/ Harris Toler
FIRST ASSISTANT ATTORNEY GENERAL

WVW/JMc/JMc

THIS OPINION CONSIDERED AND
APPROVED IN LIMITED CONFERENCE.